# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

THEOLA G. WASHINGTON,

    **Plaintiff,**

 -vs-           Case No.  8:08-cv-1614-T-27GJK

COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

_____

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

  Plaintiff Theola G. Washington (the "Claimant") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability, disability insurance benefits, and Supplemental Security Income ("SSI") benefits.  *See* Doc. No. 1.  For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED.**

## I. BACKGROUND

  Claimant was born on May 28, 1955, and she completed high school and two years of college.  R. 628-29.  Claimant's past employment experience includes working as clerical worker, payroll clerk, and teacher's assistant/aide.  R. 67, 132-39, 632-33. While working as a clerical worker and payroll clerk, Claimant's duties included filling out forms and data entry.  R. 633-34. Claimant last worked in October of 2003.  R. 634.  Claimant alleges an onset of

disability as of November 25, 2003.  R. 630-32.[1]  Claimant alleges disability due to depression, anxiety, panic attacks, and degenerative disc disease in the cervical and lumbar spine.  R. 66.

> I have pain on my neck, shoulders, knees and lower back.  I feel tired all the time.  I have problems concentrating, remembering or making decisions.  I have lost interest on my daily activities.  I suffer from anxiety and panic attacks.

R. 66. On February 4, 2004 and December 7, 2005, respectively, Claimant filed the present applications for a period of disability, disability insurance benefits, and SSI benefits.  R. 25. [2] Claimant remained insured through December 31, 2008.  R. 27.

Claimant's applications were denied initially and upon reconsideration.  R. 45-48, 54-59. On or about September 7, 2004, Claimant requested a hearing before an Administrative Law Judge (the "ALJ") and, on July 11, 2006, a hearing was held before the Honorable Robert E. Thorne.  R. 49-51, 619-95.

At the hearing, Claimant was represented by Lakeyta Toombs, Esq.  R. 619.  Claimant and an impartial medical expert, Dr. John Axline, an orthopedic surgeon, testified at the hearing. R. 619-95.  Claimant testified to the following in pertinent part:

- She became disabled when she experienced pain on her right side and her whole right side became paralyzed;

- She currently experiences disabling pain in her neck, shoulders, arm, lower back, down her leg, in her knees, and in her foot;

- Her depression has become much worse, she cries all the time, and she generally does not care about anything; and

- She lays down about eighteen hours a day and she does not do anything when she is not laying down.

---

[1] At the hearing Claimant amended her onset of disability date to November 25, 2003.  R. 630-32.
[2] The record on appeal does not contain Claimant's application for disability benefits and SSI benefits, but both parties agree with the dates and timelines discussed in the Administrative Law Judge's decision.  *See* Doc. Nos. 19 at 1 n. 1, 21 at 1 n. 1.

R. 619-45.

Dr. Axline did not examine Claimant, but reviewed the medical record, with the exception of the mental health records, and testified at length regarding Claimant's entire medical record. R. 646-88. Dr. Axline opined that Claimant's impairments did not meet or equal any listing level of severity. R. 676. The ALJ asked Dr. Axline, based on his review of the medical record, to describe any limitations in Claimant's ability to do basic work activities such as sitting, standing, walking, lifting, carry, bending, and stooping. R. 676. Dr. Axline stated the following:

> Well, there's nothing in the record to indicate she would have any difficulty with sitting, and, nor standing. She has some mild degenerative changes of part of one knee joint, I believe, but we have no physical findings of any limitations of range of motion, any fusions or treatment, and the rheumatologist found no evidence of synovitis of any of her joints, which presumably means the knees are also not showing synovitis. So standing and walking are not really limited by what's in this record. Lifting, it sounds like she has symptoms in the right shoulder which are in the bursitis category, and so I would say it would be reasonable to limit her lifting assuming she has shoulder bursitis which has been symptomatic off and on since August of 2003, assigning a 20-pound lifting limit with the right upper extremity. There is nothing in the record to show there's any limit with the upper left extremity.

R. 676-77. Dr. Axline testified that "there are no objective findings to support any of her symptoms, including x-rays, the MRI's, EMG's and multiple examining physicians notes, there are no objective impairments of neurologic function in any part of her body. . . ." R. 672. Dr. Axline also noted that Dr. Kramer, a neurologist, stated in February of 2004, that there were no objective findings supporting Claimant's symptoms and Dr. Axline interpreted those findings as meaning Claimant's symptoms "were not real." R. 662-63.

On November 22 2006, the ALJ issued an unfavorable opinion finding Claimant not disabled. R. 25-34. In his decision, the ALJ made the following pertinent findings:

1. Claimant meets the insured status requirements of the Social Security Act through December 31, 2008;

2. Claimant has not engaged in substantial gainful activity since November 25, 2003;

3. Claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine and an adjustment disorder;

4. Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments;

5. After careful consideration of the entire record, [the ALJ found] that the Claimant has the residual functional capacity ("RFC") to perform sedentary work. Specifically, the [ALJ] finds that the Claimant can occasionally lift/carry 10 pounds and frequently carry 10 pounds; she can stand/walk 2 hours in an 8 hour workday; she can sit 6 hours in an 8 hour workday; she should avoid unprotected heights and moving machinery;

6. The Claimant is capable of performing past relevant work as a data entry clerk and payroll clerk. This work does not require the performance of work-related activities precluded by the Claimant's [RFC]; and

7. The Claimant has not been under a disability as defined in the Social Security Act, from November 25, 2003, through the date of this decision.

R. 25-34. In the decision, the ALJ stated that at step two of the five step sequential evaluation process he must determine "whether the [C]laimant has a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" R. 26. The ALJ stated that 20 CFR § 404.1521 provides that "[a]n impairment or combination of impairments is 'severe' . . . if it significantly limits an individual's ability to perform basic work activities." R. 26. (emphasis added). The ALJ stated that an impairment or combination of impairments is "not severe" if "medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work."

4

R. 26.

In his decision, the ALJ provided the following thorough review of the medical record:

> The evidence reveals the [C]laimant was under the care of Paul Schorr, D.O., between January 31, 2002 and January 21, 2005 for her complaints of headaches, neck pain and back pain who referred her to specialists in orthopedics, neurology and physical therapy when her complaints of discomfort could not be resolved. During the course of treatment with Dr. Schorr, the [C]laimant reported being anxious and depressed. On July 21, 2003, Dr. Schorr stated that the [C]laimant was limited in the ability to remember locations and work-like procedures, understand, remember and carry out short and simple instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them and to make simple work-related decisions.[3]
>
> X-rays of the [C]laimant's right knee on October 14, 2003 showed degenerative changes involving the medial compartment of the knees and no evidence of fracture. An x-ray of her cervical spine showed straightening of the cervical lordosis with degenerative spondylosis but no other abnormalities. An x-ray of her right shoulder her on that day was basically within normal limits. A computerized tomography scan of her brain also on October 14, 2003 was a normal study.
>
> The [C]laimant was seen by Jeffrey Tedder, M.D., an orthopedic surgeon on October 23, 2003 for her complaints of neck pain. She reported no history of any injury. On examination, the [C]laimant had tenderness in the central cervical region and the cervical paraspinal region. There was also tenderness in the intrascapular region and increased tautness to palpation of the upper trapezial area. Dr. Tedder stated a magnetic resonance imaging scan of the [C]laimant's cervical spine showed a small central and right posterolateral disc herniation at C4-5 and a small central disc herniation at C3-4 and a posterolateral disc herniation at C5-6. This physician recommended nonsteroidals, pain analgesics, TENS unit and muscle relaxants. The [C]laimant returned for follow-up care with Dr. Tedder on November 18, 2003. She reported her cervical neck pain was improved, but she had pain in her right knee and pain in her lumbar spine. Examination was basically unchanged. No changes were made in her medication regime. She

---

[3] The ALJ noted that Dr. Schorr is family practitioner and not a psychiatrist. R. 28.

was advised to return in four weeks. There is no evidence in the record that the [C]laimant made such return visit.

Between October 28, 2003 and November 28, 2003, the [C]laimant underwent a course of chiropractic manipulation and therapy.

On December 2, 3003 [sic], the Claimant presented to Casey Gaines, M.D., a board certified neurologist for her complaint of neck pain, right shoulder pain and back pain and right leg pain. The [C]laimant reported having chiropractic treatment but [stated] it did not help. She stated in October of this year her problems became worse and she had to discontinue working. Dr. Gaines stated the [C]laimant was well developed and well nourished. He stated the [C]laimant held her right arm at the side and did not use it except intermittently. Dr. Gaines stated that the magnetic resonance imaging scan of the [C]laimant's neck revealed some mild spondylosis and some disc bulges and these were largely midline and there was no clear herniation to account for the right arm pain. This physician stated that the [C]laimant would not benefit from surgical intervention. As the [C]laimant did not wish to proceed with any therapy type intervention, pain management was recommended. As in previous examinations, the [ALJ] notes that examination of the [C]laimant showed no motor, sensory or reflex abnormalities.

The [C]laimant was examined by Howard W. Sharf, M.D., an orthopedic specialist on December 18, 2003 for her complaints of neck pain and back pain. The [C]laimant denied any specific injury but associated the onset of her symptoms to heavy lifting. Following examination of the [C]laimant and review of her radiographic studies, Dr. Sharf stated that the [C]laimant had lumbar and cervical facet syndrome with some possibility of discogenic pain. He felt the [C]laimant would benefit from oral anti-inflammatories, muscle relaxers and pain medication as well as facet blocks for both the cervical and lumbar spine. He referred the [C]laimant to Dr. Fuoco for [Epidural Steroid Injections].

The [C]laimant presented to Dr. Fuoco on February 2, 2004. This physician stated following examination of the [C]laimant and review of her radiographic studies he believed that further investigation was warranted and felt the [C]laimant should have EMG and nerve conduction studies of both the right upper extremity as well as the right lower extremity. He also recommended a magnetic resonance imaging scan of the

6

[C]laimant's lumbar spine.

Eric Kramer, M.D., after examination of the [C]laimant on February 26, 2004 stated the [C]laimant was having subjective debilitating pain, but he did not see any particular examination findings suggestive of a particular radiculopathy. He indicated there were no reflex abnormalities, and the pattern of sensory abnormality was quite unusual and difficult to localize. He referred the [C]laimant for EMG and nerve conduction studies of both the right and lower extremities. Again, [the ALJ notes] no motor or reflex abnormalities noted on examination and no clear evidence of sensory abnormalities.

When the [C]laimant returned to Dr. Fuoco on March 4, 2004, he advised the [C]laimant that the magnetic resonance imaging study of her lumbar spine showed at the L5-S1 level a bulge eccentric left causing some flattening of the thecal sac and coming close to the descending left S1 nerve root but no herniated nucleus pulposus. Dr. Fuoco stated that the EMG and nerve conduction studies showed evidence of bilateral lumbar radiculitis however it had not progressed far enough to show findings in the lower extremity limbs and it was mild in nature. He did state that the [C]laimant was in need of physical therapy and wrote a prescription for such.

As the [C]laimant reported depression and anxiety, the Office of Disability Determinations referred her to Steven E. O'Neal, Ph.D., for a psychological evaluation on April 9, 2004. The [C]laimant reported receiving psychological services in the past to deal with medical problems and deaths in the family. She denied any inpatient psychiatric hospitalizations. She drove herself to the examination and arrived on time. Ambulation, gait and stance appeared within normal limits. She was able to sit without incident throughout the evaluation. She was orientated to person, time, situation and place. Recent and remote memory appeared intact as did attention and concentration. Mood was mildly dysthymic with congruent affect noted. Judgment, insight and impulse control were within normal limits. Although not formally tested, intellectual functioning was judged to be in the average range based upon fund of information and vocabulary usage. Diagnostic impression was adjustment disorder with anxiety and depressed mood and Global Assessment of Functioning Scale of 65. [The ALJ found] Per the Diagnostic and Statistical Manual of Mental Disorders a score of 65 is indicative of mild symptoms or mild

difficulty in functioning.

Under the care of Dr. Fuoco, on June 16, 2004, the [C]laimant underwent caudal epidural steroid injection. When seen on June 30, 2004, the [C]laimant reported she had relief of her pain for one and a half weeks but then it returned. Dr. Fuoco recommended another injection and this was performed on July 14, 2004. When she saw Dr. Fuoco on July 28, 2004 the [C]laimant indicated that the second caudal injection helped quite a bit and while she continued to have some pain in the inside of her right legal overall she was doing much better. Also during this period, the [C]laimant underwent 9 sessions of physical therapy between July 19, 2004 and August 17, 2004 with therapy being discontinued due to no reported progress. Dr. Fuoco stated on July 28, 2004 that [C]laimant was restricted from work until next visit. The [C]laimant underwent a right cervical facet interarticular injection on October 4, 2004. When she saw Dr. Fuoco on October 18, 2004 she reported with the injection, that her pain was decreased for about a week, but then it returned. She stated that her lower back was also a problem but not as much as her neck. At that point Dr. Fuoco recommended a repeat magnetic resonance imaging scan of the [C]laimant's cervical spine. On November 17, 2004, Dr. Fuoco stated that the repeated magnetic resonance imaging scan of the [C]laimant's cervical spine was not any different from her previous study. At Dr. Fuoco's recommendation the [C]laimant underwent a cervical medial branch block on December 6, 2004. On December 21, 2004, Dr. Fuoco stated that the [C]laimant's functional limitations were such that she could not even perform sedentary work. The [C]laimant cancelled her injection on December 29, 2004.

On January 24, 2005, the [C]laimant underwent a right cervical medial branch radiofrequency ablation. During a follow-up visit on February 8, 2005, the [C]laimant reported 80% improvement in her pain.

On January 6, 2006, the [C]laimant under the care of Dr. Fuoco underwent a right cervical paraspinal muscle trigger point injection. On January 27, 2006, the [C]laimant underwent a magnetic resonance imaging scan of her cervical spine and lumbar spine. The study of her cervical spine showed at the C3-4 a small right paracentral protrusion and disc bulge to the right at the C4-5 level, otherwise the remainder of the levels appeared fairly well preserved. The study of her lumbar spine showed at the L5-S1

level disc dehydration and mild left paracentral protrusion and some mild facet arthropathy noted at the lower two to three levels bilaterally. On June 2, 2006, when the [C]laimant returned to Dr. Fuoco she reported multiple aches and pain. Dr. Fuoco offered her epidural steroid injection for her back as he stated these significantly helped with her lower back and leg symptoms. He also stated that he believed a lot of the [C]laimant's complaints were fibromyalgia related or something else rheumatological and recommended that the [C]laimant see a rheumatologist. Dr. Fuoco again recommended epidural steroid injections as the [C]laimant had had significant relief with this treatment.

On June 16, 2006 the [C]laimant was seen by Anthony G. Sankoorikal, M.D., a board-certified rheumatologist. The [C]laimant had a chief complaint of pains involving the right shoulder and low back. Joint examination revealed no active synovitis but right shoulder movements were limited. There was no spinal tenderness or paravertebral spasm. Trigger point was elicited in the left low back. Neurological examination was non-focal. There was no edema in her extremities. The [C]laimant's right shoulder was injected with steroid anesthetic mixture. The assessment was myofascial pain with trigger point in the left low back. When the [C]laimant returned for follow-up care on June 30, 2006, her right shoulder was once more injected with steroid anesthetic mixture. Examination was unchanged. This physician did order blood work to include rheumatoid factor and ANA. The file however is devoid of such report.

On August 17, 2006, Dr. Fuoco completed a statement assessing the [C]laimant's functional limitations. He stated that the [C]laimant could lift and carry up to 10 pounds occasionally and frequently, stand/walk up to 2 hours in an 8 hour workday, sit up to 6 hours in an 8 hour workday, she was never to climb or balance but could occasionally stoop, crouch, kneel and crawl, she was to avoid repetitive reaching, handling, feeling and pushing/pulling more than 10 pounds and she was to avoid heights and moving machinery.

During this period the evidence reveals that the [C]laimant received sporadic outpatient treatment from Suncoast Center for Community Mental Health, Inc., and she was seen mainly by a mental health nurse practitioner. On January 18, 2006, Nurse Practitioner Patricia Fradley stated that the [C]laimant was last seen in June 2005 and that she had missed a number of

appointments. The [C]laimant reported she did have medication for sometime with refills but had now run out of medication and was having a hard time including some flashbacks of abuse by her husband. She also gave a history of depression since 1984. She also reported having a quart or two of beer once or twice a week. Mental status examination revealed the [C]laimant to be alert, oriented and cooperative. Sensorium was clear with some considerable anxiety. No abnormal motor activity other than walking somewhat slow which the [C]laimant reported was secondary to recent surgery for a prolapsed bladder. Her mood was depressed and her affect blunted. Her memory was reasonably intact. Nurse Fradley stated there was some difficulty with concentration. Diagnosis consisted of major depression, recurrent with anxiety and post traumatic stress disorder. Global Assessment of Functioning Scale was assessed at 50. Claimant was given a prescription for Prozac, Zanax and Seroquel.[4]

R. 28-32.

Regarding Dr. Axline's testimony, the ALJ stated the following:

Dr. Axline had reviewed the medical evidence and heard the [C]laimant's testimony. Dr. Axline noted that the earliest notes were in December 2002 and the latest in June 2006. He indicated that the [C]laimant has had musculoskeletal symptoms regarding her neck since August 2003 but that x-rays of her cervical sine [sic] were normal. Dr. Axline indicated when the [C]laimant was seen by Dr. Gaines . . . examination revealed the [C]laimant's reflexes to be normal, motor examination showed no clear paresis and review of her magnetic resonance imagining of her neck showed some bulges but no clear herniation. Dr. Axline indicated that Dr. Kramer . . . found no evidence of radiculopathy and no reflex abnormalities. Dr. Axline stated that Dr. Scharf [sic] in December 2003 . . . indicated [Claimant] had a normal gait, full range of motion of the cervical and lumbar spine, negative straight leg raising and no muscle atrophy. Dr. Axline stated that this physician found no evidence of herniation in the [C]laimant's magnetic resonance imaging scan of her cervical spine. Dr. Axline also stated that this doctor did not anticipate that the [C]laimant would need surgical intervention. Dr. Axline stated that the EMG and nerve conduction studies in March 2004 did not show any significant abnormalities. Dr. Axline stated based on a full review of all the evidence that there was no objective evidence to support

---

[4] In his decision, the ALJ notes that Nurse Fradley is not a psychiatrist. R. 32.

the [C]laimant's symptoms in any part of her body. He further stated that epidural steroid injections were not an invasive treatment. Dr. Axline also stated that there was no objective evidence to justify [C]laimant needing a walker. When asked by the [ALJ] if the [C]laimant met or equaled any of the Listings . . ., Dr. Axline testified that the [C]laimant did not. He further stated that within a reasonable degree of certainty that the [C]laimant was capable of performing light work activity.

R. 32. The ALJ concurred with that portion of Dr. Axline's testimony stating "the weight of the objective evidence does not support the conclusion regarding [C]laimant's total physical incapacity." R. 33.

At step four of the sequential process, the ALJ determined Claimant's RFC for sedentary work. R. 28-33. The ALJ stated that in making this determination he considered all of Claimant's symptoms in accordance with 20 CFR §§ 404.1529, 416.929 and Social Security Rulings ("SSR") 96-4p and 96-7p. R. 28. The ALJ also stated he considered the opinion evidence in accordance with 20 CFR §§ 404.1527, 416.927 and SSR 96-2p, 96-5p and 96-6p. R. 28. The ALJ determined that while Claimant's medically determinable impairments "could reasonably be expected to produce the alleged symptoms," the Claimant's statements concerning the intensity, persistence and limiting effects of those symptoms "are not entirely credible." R. 32. The ALJ provided the following reasons for finding Claimant's subjective statements not entirely credible:

The undersigned finds that while the [C]laimant has undoubtedly experienced musculoskeletal discomfort at various times, her allegations are not entirely consistent with the medical and other evidence. Findings on physical examinations generally reflect good range of motion and stability with no positive signs of significant abnormalities that would give rise to the degree of pain alleged. Multiple magnetic resonance imaging scans of her cervical spine and lumbar spine have not revealed herniated nucleus pulposus and there is no evidence of stenosis or nerve root

11

impingement. EMG and nerve conduction studies showed only possible cervical radiculitis, with Dr. Fuoco stating there were minimal findings in this study. Although the [C]laimant reported she spent her days either lying down or sitting up in a bed, there is no evidence of muscle atrophy or wasting. Other findings include an absence of consistent motor, sensory or reflex abnormalities. . . . Still further, at the hearing the [C]laimant stated that she seldom drove but drove herself to a consultative psychological examination. Such contradictory statements further undermine the [C]laimant's credibility. Therefore, affording the [C]laimant the benefit of the doubt, the [ALJ] has accepted the [C]laimant's allegations that she is unable to engage in strenuous exertion. However, to the extent that the [C]laimant alleges that her impairments prevent her from performing a wide range of sedentary work, the [ALJ] does not find the [C]laimant fully credible.

R. 32-33.

Regarding the opinion evidence, the ALJ determined that Dr. Fuoco's opinions that Claimant was unable to work at various times contradicted other statements from Dr. Fuoco stating that Claimant could perform a wide range of sedentary work. R. 33. The ALJ rejected to Dr. Fuoco's opinions that Claimant was unable to work because "Dr. Fuoco stated that the [C]laimant was unable to work but gave no timeframe for his findings . . . and no specific reason for his opinion," and "the weight of the objective medical evidence does not support" his opinion. R. 33 (emphasis added). The ALJ did not specify why the objective medical evidence does not support Dr. Fuoco's opinion. R. 33.

The ALJ gave little or no weight to Dr. Schorr's opinions regarding Claimant's mental health impairments because his opinions were unsupported by the medical evidence and because Dr. Schorr is a family practitioner and not a psychiatrist or mental health professional. R. 33. Therefore, the ALJ rejected Dr. Singh's opinion that Claimant was disabled for a six month period beginning in January 2006 because the opinion was not supported by the evidence. R.

33.[5]  The ALJ rejected the opinions of the non-examining state agency consultants at the initial and reconsideration levels because they did not have all the evidence in the record.  R. 33.

At step five of the sequential process, the ALJ determined that based on Claimant's RFC she could perform her past relevant work as a data entry clerk and payroll clerk.  R. 33. Accordingly, the ALJ found that Claimant was not under a disability.  R. 34.

On November 27, 2006, Claimant requested review of the ALJ's decision before the Appeals Council.  R. 22.  On June 24, 2008, the Appeals Council denied review stating that it found no reason under its rules to review the ALJ's decision.  R. 5-8.  On August 18, 2008, Claimant timely filed an appeal in this Court.  Doc. No. 1.  On March 4, 2009 Claimant filed a memorandum in support of her position on appeal.  Doc. No. 19.  On May 4, 2009, the Commissioner filed a memorandum in support of the Commissioner's final determination.  Doc. No. 21.  The appeal is now ripe for review.

## II.  THE PARTIES' POSITIONS

Claimant assigns three errors to the Commissioner's decision: 1) the ALJ lacked good cause to give little or no weight to the disability opinions of Dr. Fuoco; 2) the ALJ erred by determining that Claimant's right shoulder, hand and wrist pain, as well as depression and anxiety were not "severe" impairments; and 3) the ALJ erred by finding Claimant's subjective complaints of pain not entirely credible because the ALJ only relied on an apparent contradiction between Claimant's testimony that she is unable to drive and notes from Dr. Neal showing Claimant drove herself to the appointment.  Doc. No. 19 at 1-17.[6]

---

[5] The Claimant does not specifically challenge this finding on appeal.

[6] Claimant also generally alleges that the ALJ failed to discuss a July 27, 2001, mental health evaluation and GAF score of 40, but Claimant fails to state whether such failure is error or to request any specific relief.  Doc. No. 19 at 17.  Claimant fails to cite to any case law, and the undersigned knows of none, establishing that it is reversible error

The Commissioner argues that substantial evidence supports his decision to deny Claimant's claims for a period of disability, disability insurance benefits, and SSI benefits. Doc. No. 21 at 1-24. The Commissioner maintains that: 1) the ALJ properly rejected Dr. Fuoco's disability opinions because they are not supported by the evidence and are contrary to his own treatment records; 2) the ALJ properly determined that Claimant's right shoulder, hand, and wrist pain, as well as depression and anxiety were not severe impairments because the record lacks substantial evidence of significant functional limitations due to said impairments and, alternatively, because the ALJ found a severe impairment of degenerative disc disease in the cervical and lumbar spine and a severe mental impairment of adjustment disorder, the ALJ could not have erred at step two of the sequential process (citing *Council v. Barnhart*, No. 04-13128 at 4 (11th Cir. Dec. 28, 2004) (unpublished) ("the ALJ could not have committed any error at step two because he found that [the Claimant] had a severe impairment or combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two.")); and 3) substantial evidence supports the ALJ finding that Claimant's subjective complaints of pain are not entirely credible and the ALJ relied on more than Claimant's statements regarding her ability to drive. Therefore, the Commissioner requests that the Court affirm the decision below.

---

for an ALJ to fail to discuss a mental health evaluation that occurred more than three years prior to the Claimant's alleged onset date (November 25, 2003) and prior to a previous denial of disability benefits. There is no rigid requirement that an ALJ specifically reference every piece of evidence as long as a reviewing court is able to determine that the ALJ considered the medical record and a claimant's condition as a whole. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

## III.    LEGAL STANDARDS

### A.    THE ALJ'S FIVE STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975. If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work

activities. 20 CFR § 404.1521. An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A mere diagnosis is insufficient to establish that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work activities. *See Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987). A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled.

If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform

the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  If the claimant has the RFC to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience.  In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 C.F.R. § 404.1567.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

## B.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the

Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord*, *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089-92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord*, *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his

decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[7]  In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1) that there is new, non-cumulative evidence; 2) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090-92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).  A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at 1095.[8]

## IV.      ANALYSIS OF ALLEGED ERRORS

### Whether Good Cause Exists to Reject Dr. Fuoco's Opinions

Claimant argues that the ALJ improperly rejected Dr. Fuoco's opinions that Claimant was totally disabled.  Doc. No. 19 at 10-14.  Claimant maintains that the ALJ inaccurately stated

---

[7] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

[8] With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact.  *Id.*  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  *Id.*

that Dr. Fuoco, while often opining that Claimant was disabled from working, also opined that Claimant could perform a wide range of sedentary work. Doc. No. 19 at 11. Claimant further maintains that the ALJ incorrectly stated Dr. Fuoco did not provide a reason why Claimant was unable to work or a time frame for Claimant's disability. *Id.* The Commissioner maintains that the ALJ properly rejected Dr. Fuoco's opinions that Claimant was totally disabled because the opinions were inconsistent with his own treatment records and the medical record as a whole. Doc. No. 21 at 12-19.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability. As a general rule, the ALJ must state with particularity the weight given different medical opinions and the reasons therefor, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).[9] However, the ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986). Absent good cause, the opinions of treating or examining physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005). However, a statement from a

---

[9] The Regulations maintain that an ALJ "will always give good reasons in [their] . . . decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

treating physician that a claimant is disabled from working is not a medical opinion and is a determination reserved to the Commissioner.  *See* 20 CFR § 404.1527(e) (2006).

In his decision, the ALJ stated that Dr. Fuoco provided no timeframe for his opinion that Claimant was not capable of working and offered no specific reasons for his opinion.  R. 33.  The ALJ's statements are not supported by the record.  Dr. Fuoco treated Claimant for roughly three years.  R. 419-503, 559-78.  Dr. Fuoco opined on numerous occasions that Claimant was "temporarily" disabled from working.  *See* R. 427-28, 430-32, 438, 445-46, 455, 464, 466-67, 475, 481, 489-90, 496, 499-503, 559-67, 571-73, 576-78.  On August 17, 2006, Dr. Fuoco opined that Claimant was permanently prevented from performing proper gainful employment due to an MRI showing disc protrusions in the lumbar and cervical spine and due to functional limitations she exhibited during physical examinations.  R. 576-78.  The ALJ also stated that "[a]t other times, Dr. Fuoco stated that the [C]laimant could perform a wide range of sedentary work."  R. 33.  However, after carefully reviewing the entire record, the undersigned was unable to find any treatment notes, opinions, or other statements from Dr. Fuoco indicating that Claimant could perform a wide range of sedentary work.  The undersigned concludes that the ALJ's statement is a material misstatement of fact.  However, a single erroneous statement by an ALJ standing alone does not require remand.  *See Rhodes v. Astrue*, 2008 WL 360823 at *3 (M.D. Fla. Feb 8, 2008).

In his decision, the ALJ summarily rejects Dr. Fuoco's opinion stating "the weight of the objective evidence does not support the conclusion [that Claimant suffers from] total physical incapacity."  R. 33.  However, the ALJ offers no more specific explanation and does not cite to any evidence in the record supporting his conclusion.  R. 33.  *In Morrison v. Barnhart*, 278

23

F.Supp.2d 1331, 1336 (M.D. Fla. 2003), another division of this Court stated the following:

> . . . the ALJ's explanation that Dr. Yonker's opinion "is not consistent with the evidence of record as a whole, including the doctor's own examination findings," (T 19) is too general to permit meaningful judicial review in this case. Upon consideration, the court finds the ALJ erred by failing to properly evaluate Dr. Yonker's opinion, and a remand is warranted. On remand, the ALJ is directed to reevaluate Dr. Yonker's opinion and identify specifically what evidence of record "as a whole" was inconsistent and which of Dr. Yonker's own examination findings were inconsistent with his opinion.

*Id.* Moreover, in *Monte v. Astrue*, Case No. 5:08-cv-101-Oc-GRJ, 2009 WL 210720 at *6 (M.D. Fla. Jan. 28, 2009), the Court held:

> When assessing the Plaintiff's impairments, the ALJ was required to make "specific and well-articulated findings . . ." [B]ecause an ALJ is not permitted to substitute his judgment for that of the medical experts, the ALJ cannot reject portions of a medical opinion without providing an explanation for such a decision. Where an ALJ fails to sufficiently explain how he reached his decision, the Court may not speculate.

*Id.* (quoting *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987)). Therefore, reversal is required where an ALJ fails to sufficiently articulate the reasons for finding a treating physician's opinion not consistent with the record as a whole.

In this case, the ALJ failed to sufficiently articulate why he concluded that Dr. Fuoco's opinions are not supported by the objective medical evidence and it would be improper for this Court to speculate as to what those reasons may be. *Id.* The fact the ALJ stated Dr. Fuoco had opined that Claimant could perform a wide variety of sedentary work and the Court cannot locate evidence supporting that statement in the record further exacerbates the error. Accordingly, the undersigned recommends that the Court find the ALJ erred because good cause did not exist to reject Dr. Fuoco's opinion. It is further recommended that the Court find this error warrants

reversal and remand of the case for the ALJ to reevaluate the record and if he is inclined to discount Dr. Fuoco's opinion to specify the basis for finding good cause to do so. *See Sharfarz*, 825 F.2d at 279.

## V.    CONCLUSION

Based on the above stated reasons, the undersigned **RECOMMENDS** that the Court:

1) **REVERSE and REMAND pursuant to sentence four of Section 405(g)** the final decision of the Commissioner;

2) Direct the Clerk to enter a separate judgment in favor of the Claimant; and

3) Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within **eleven (11) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on August 21, 2009.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Presiding District Judge

**The Court Requests that the Clerk**
**Return the Record to the Tampa Division**
Mail or Deliver Copies of this Report and Recommendation to:

Enrique Escarraz, III
Enrique Escarraz, III, Esq.
2500 First Avenue South
P.O. Box 847

St. Petersburg, FL 33731

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Richard V. Blake, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Robert E. Thorne
Administrative Law Judge
c/o Social Security Administration
Office of Disability Adjudication and Review
The Times Building
1000 N. Ashley Dr.
Tampa, FL 33602